UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICHOLAS B.,

            Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

_____

20-CV-06970-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Nicholas B.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 12) is granted, and defendant's motion (Dkt. No. 13) is denied.

## BACKGROUND[2]

On March 13, 2017, Plaintiff protectively filed a DIB application, alleging disability as of June 25, 2015 (Administrative Transcript ["Tr."] 157-58). His application was denied,

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 60-74). On August 5, 2019, following a July 10, 2019 hearing and *de novo* review of his application, the ALJ found Plaintiff not disabled. (Tr. 7-21, 28-47). On September 26, 2020, the Appeals Council denied Plaintiff's request for review and the ALJ decision became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). (Tr. 1-6). This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective

medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements

of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 25, 2015, the alleged onset date. (Tr. 12). At step two, the ALJ found that Plaintiff had the following severe impairments: asthma; chronic left-sided facial pain; chronic pain syndrome; sleep apnea; and obesity. (Tr. 12). At step three, the ALJ found that Plaintiff's impairments did not satisfy any Listing. (Tr. 13). Then, the ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except he could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. (Tr. 13). Further, Plaintiff could understand, remember, and carry out simple instructions and tasks, and be able to consistently maintain concentration and focus for up to two hours at a time. (Tr. 13). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 15-16). Proceeding to step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of hand packager and bagger. (Tr. 16-17). Thus, the ALJ found Plaintiff not disabled within the meaning of the Act. (Tr. 17).

*Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the case must be remanded because the ALJ failed to address Plaintiff's bilateral knee pain and medial compartment arthritis at step two of the five-step sequential evaluation process. The Court agrees.

Whether an impairment is "severe" for purposes of step two "is not a demanding standard." *McHugh v. Astrue*, 2013 WL 4015093 *9 (W.D.N.Y. Aug. 6, 2013); *E.g., Spears v. Heckler,* 625 F.Supp. 208, 212–13 (S.D.N.Y.1985); *see also Taylor v. Astrue,* No. 6:11–cv–588(GLS), 2012 WL 1415410, at *2 (N.D.N.Y. Apr. 24, 2012) (cited in *Pierce v. Astrue,* 2013 WL 2179295, at *13 (W.D.N.Y. May 17, 2013)). Courts have held that step two of the five-part analysis is limited to "screen[ing] out *de minimus* claims." *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995). "Where an ALJ's exclusion of an impairment from the list of severe impairments is not supported by substantial evidence, and the ALJ fails to account for functional limitations associated with the excluded impairment in determining the claimant's RFC, remand for further administrative proceeding is appropriate." *Fontanez v. Colvin*, No. 16-CV-01300 (PKC), 2017 WL 4334127, at *15 (E.D.N.Y. Sept. 28, 2017).

Here, in October 2017, Dr. Chrstine Blonski diagnosed Plaintiff with acute pain in both knees with patellar mal-tracking and mild medial compartment arthritis. (Tr. 412; 414). Dr. Blonski also could not rule out meniscal tear. (Tr. 416). This was confirmed by x-ray. (Tr. 418). While Plaintiff had some improvement with physical therapy, Dr. Blonski recommended Plaintiff to continue with "activity modification as guided by pain." (Tr. 412). Dr. Larsa Khishchenko included "left knee pain and problem" in Plaintiff's "current medical problems" as late as October 2018. (Tr. 341). Thus, there is a medically determinable

knee impairment that lasted at least one year—which could qualify this as a severe or non-severe impairment. *See 20 C.F.R. § 404.1505(a).* Yet the ALJ provided no evaluation of this impairment or treatment whatsoever.

While it is possible that the ALJ could consider this a non-severe impairment---that would not mean the ALJ was justified in totally ignoring it. An RFC must account for limitations imposed by both severe and non-severe impairments. *Parker-Grose v. Astrue*, 462 Fed.Appx.16, 18 (2d Cir. 2012); *see* 20 C.F.R. § 416.945 (a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe,"...when we assess your residual functional capacity").

> In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

SSR 96-8p.

This is particularly important in this case. Plaintiff had the severe impairment of obesity. (Tr. 12). In October 2018, Plaintiff weighed 332 pounds with a BMI of 45. (Tr. 341). The Social Security regulations explain that obesity "increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities." SSR 19-2p. In fact, obesity and arthritis of a weight bearing joint is the specific example used the regulations.

> The combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately. For example, someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone. We consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments.

*Id.* Thus, Plaintiff's obesity and knee arthritis needed to be evaluated *in combination* to fully and fairly determine Plaintiff's level of disability. The failure to do so warrants remand.

In sum, the ALJ completely failed to evaluate whether Plaintiff's bilateral knee pain and medial compartment arthritis was a severe or non-severe impairment. This was harmful error given Plaintiff's co-morbid impairment of obesity—which the defendant's own regulations acknowledge could worsen the symptoms of weight bearing joint disease. Accordingly, remand is required.[3]

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is granted and defendant's motion for judgment on the pleadings (Dkt. No.13) is denied.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   February 22, 2023
         Buffalo, New York

                                                        _____
                                                        MICHAEL J. ROEMER
                                                        United States Magistrate Judge

---

[3] Plaintiff also argues that remand is required because the ALJ did not properly evaluate Plaintiff's subjective complaints of pain. The defendant should also consider this argument on remand.